25-732-cv
*Zennamo v. County of Oneida*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of July, two thousand twenty-six.

PRESENT:
> ROBERT D. SACK,
> SUSAN L. CARNEY,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

CORY ZENNAMO,

> *Plaintiff-Appellant*,

> v.                                                                25-732-cv

COUNTY OF ONEIDA, ANTHONY J. PICENTE, JR., INDIVIDUALLY, PETER M. RAYHILL, INDIVIDUALLY,

*Defendants-Appellees.*[*]

_____

FOR PLAINTIFF-APPELLANT:     CORY ZENNAMO, *pro se*, Zennamo Litigation & Advocacy, PLLC, Ilion, New York.

FOR DEFENDANTS-APPELLEES:     DANIEL K. CARTWRIGHT, (Taylor L. Pilecki, *on the brief*), Foti Henry, PLLC, Buffalo, New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on March 19, 2025, is **AFFIRMED**.

## BACKGROUND

Plaintiff-Appellant Cory Zennamo ("Zennamo") is an attorney who, between February 1, 2010, and July 27, 2020, worked for the Oneida County Public Defender's Office. During those years, he also practiced privately in his firm, Zennamo & Feiner PLLC. Before June 24, 2020, Zennamo admittedly used his County-issued work computer to "look into matters pertaining to his private practice." App'x at 545**.**

---

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

Zennamo's use of his work computer was subject to the County's Information Technology Acceptable Use Policy ("the AUP"), which the Oneida County Board of Legislators adopted in 2017.  The AUP provides that "[a]ll Oneida County Electronic communication systems . . . are to be used for business purposes only."  App'x at 724 (emphasis omitted).  It further provides that "[f]or security and network maintenance purposes, authorized individuals within Oneida County may monitor equipment, systems, data and network traffic at any time" and that "Oneida County intends to monitor all electronic communications systems including but not limited to computer files, email and Internet use without prior notice to Users."  App'x at 726. It specifies, at the same time, that "[m]onitoring pursuant to this policy of any and all electronic communications, computer files, emails or Internet usage within a department which is subject to a legally recognized privilege or confidentiality requirement shall be done only by the Department Head or IT personnel authorized by the [County Chief Information Security Official]."  App'x at 725, 727.

Sometime in 2020, Defendant-Appellee Peter M. Rayhill ("Rayhill"), the Oneida County Attorney, received a complaint relating to a County employee's private representation of an individual in a divorce proceeding. He relayed that

complaint to the County Executive, Defendant-Appellee Anthony J. Picente ("Picente"). On June 24, 2020, Picente called a meeting with the County's public defenders at which Picente expressly prohibited all personal use of County-issued computers, instructed the public defenders to cease private practice on County time, and directed them to remove their private files from the County's server. Zennamo attended that meeting.

After the meeting, Zennamo complained to Frank J. Nebush ("Nebush"), the Oneida County Public Defender and Zennamo's direct supervisor, about the County's policy and expressed concerns based on the need for client confidentiality about possible searches of his and other public defenders' computers. Several days after his conversation with Nebush, Zennamo sent Nebush an email reiterating his confidentiality concerns. A few days later, when Nebush had failed to respond to the email, Zennamo discussed the issue with Nebush in an in-person meeting at Nebush's office.

Shortly after the in-person meeting, the County's IT department took Zennamo's work computer. Zennamo alleges that the County did so under the pretext of checking for a virus. Defendants-Appellees deny that they used any such pretext: they say they took Zennamo's computer to investigate whether

Zennamo was still using it for his private practice. After the seizure, Picente claims, he discovered on Zennamo's computer a file that bore Zennamo's private practice letterhead, which Picente took to be evidence that Zennamo was continuing to use County resources and time for his private practice, notwithstanding the mandate issued at the June 24 meeting.

On July 27, 2020, at Picente's direction, Nebush dismissed Zennamo from his job at the Public Defender's Office. Zennamo claims that he was not given an explanation for his firing at the time. Nebush later stated under oath that he (Nebush) understood that the reason for the firing was the "extent" of Zennamo's personal use of County equipment, App'x at 365–66, 548, and Picente stated that the reason for the firing was Zennamo's continued private practice while employed by the Public Defender's Office. Zennamo disputes these explanations, claiming instead that he was fired for speaking out about the ethical issues he thought were raised by the County's "access to confidential files and information." App'x at 798.

Zennamo filed the operative complaint on August 27, 2023.  The defendants in the case are Picente and Rayhill, in their individual capacities, as well as Oneida County.[1]  Zennamo's claims are:

(1) A First Amendment retaliation claim under 42 U.S.C. § 1983 against all Defendants for allegedly firing him in response to his email about ethical concerns;

(2) A free speech claim under Article 1, § 8 of the New York Constitution against all Defendants for allegedly firing him in response to his email about ethical concerns;

(3) A claim under 42 U.S.C. § 1983 against all Defendants for violating his Fourth Amendment right to privacy by searching his computer;

(4) A claim against Picente and Oneida County for "fraud to further digital trespass and Fourth Amendment violations," related to Zennamo's allegation that the County lied to obtain his computer, falsely claiming that the computer had a virus, App'x at 37; and

(5) A claim for breach of an implied-in-law contractual agreement to abide by the Rules of Professional Conduct against all Defendants for allegedly

---

[1] On December 26, 2023, Zennamo stipulated to a discontinuance against then-Defendant Frank Nebush. The district court so-ordered the stipulation.

requiring him to violate his ethical responsibilities in the course of his employment.

Zennamo moved for summary judgment as to his third claim on December 8, 2023; Defendants Oneida County, Picente, and Rayhill cross-moved for summary judgment as to all claims on December 12, 2023. On March 18, 2025, the district court granted Defendants' motion for summary judgment and denied Zennamo's. Zennamo timely appealed.

We assume the parties' familiarity with the remaining facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision.

## DISCUSSION

We review grants of summary judgment *de novo*. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 258 (2d Cir. 2023). We "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). Summary judgment is proper only if no "reasonable jury could return a verdict for the nonmoving party" because there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis omitted).

## I.  The district court's consideration of Zennamo's filings

As a preliminary matter, Zennamo contends that the district court abused its discretion in declining to consider his response to Defendants' statement of material facts ("SMF") and his statement of additional material facts for failure to comply with N.D.N.Y. Local Rule 56.1.  We disagree.

N.D.N.Y. Local Rule 56.1(a) provides in relevant part that SMFs "shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established." N.D.N.Y. Local Rule 56.1(a) (2023 ed.).  A party's response to an SMF "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs" and shall "set forth a specific citation to the record where the factual issue arises."  *Id.* Rule 56.1(b).  "Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion," and "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *Id.* Rule 56.1(a), (b) (emphasis omitted).

Here, none of Zennamo's filings complied with Local Rule 56.1. Zennamo's SMF was not set forth in numbered paragraphs, his response to Defendants' SMF lacked citations to the record, and a portion of his additional SMF attempted to rebut factual assertions in Defendants' SMF. The district court considered Zennamo's SMF despite its deficiencies, but it declined to consider his response to Defendants' SMF and the rebuttal portions of his additional SMF. While district courts must make sure that the record supports the moving party's contentions, they are not obliged to do a party's work for them if the party's Rule 56.1 statements are deficient.[2] *See T.Y. v. New York City Dept. of Educ.*, 584 F.3d 412, 417–18 (2d Cir. 2009). The district court was within its discretion to decline to consider Zennamo's response to Defendants' SMF and the rebuttal portions of his additional SMF given his repeated failures to comply with Local Rule 56.1. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ("A district court has broad

---

[2] We note that, although we "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest," *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted), we do not apply that special solicitude in cases where, as here, an attorney is proceeding *pro se*, *see Cox v. Dep't of Justice*, 111 F.4th 198, 207 (2d Cir. 2024). Moreover, while Zennamo proceeds *pro se* on appeal here, he was represented by counsel, Frank Policelli, in the district court.

discretion to determine whether to overlook a party's failure to comply with local court rules.").

Accordingly, we proceed on the record as considered by the district court.

**II.  Retaliation under the First Amendment and Art. I § 8 of the New York State Constitution**

To prove a First Amendment retaliation claim against his employer, a public employee must establish: (1) that his speech was protected under the First Amendment; (2) that his employer took adverse action against him; and (3) that the protected speech was causally connected to the adverse action.[3]  *See Shara v. Maine-Endwell Central Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022).

Defendants took an adverse action against Zennamo: they terminated his employment.  But even assuming that Zennamo's speech regarding his concerns about client confidentiality was protected , he has failed to establish a causal

---

[3] The New York Court of Appeals has refused to recognize a state constitutional tort claim where alternative remedies are available to plaintiffs. *See Brown v. State of New York*, 89 N.Y.2d 172, 192 (1996) (recognizing a "narrow remedy" for state constitutional tort claims where a plaintiff has no alternative remedy); *Martinez v. City of Schenectady*, 97 N.Y.2d 78 (2001) (applying the alternative remedy principle); *see also Bullard v. State of New York*, 307 A.D.2d 676 (3d. Dept. 2003) (applying the principle to a claim under Article 1, Section 8 of the New York State Constitution); *Shelton v. New York State Liquor Authority*, 61 A.D.3d 1145 (3d Dept. 2009) (applying this principle to an alternative remedy under 42 U.S.C. § 1983); *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) (summary order) (same).  Because Zennamo has a potential federal remedy, we need not address his claim under the New York State Constitution.

connection between the allegedly protected speech and his termination. We agree with the district court that the record shows no genuine issue of material fact as to Defendants' intent in ending Zennamo's employment.

Zennamo offered no evidence to suggest that Defendants admonished him at all for voicing his concerns about client confidentiality. This undisputed fact undermines his claim that his speech was the cause of his firing. That two County employees provided differing accounts for why he was fired—either because of his private use of County resources or because of his continued work in private practice—fails to persuade that he was fired for an impermissible reason. First, neither of these two explanations provides any direct support for the proposition that his firing was causally connected to his speech. Second, these two explanations are not mutually exclusive, nor would a minimal inconsistency between them be sufficient to create an issue of material fact as to retaliatory intent and its causal impact.

In the absence of direct evidence, Zennamo offers two reasons for drawing an inference of retaliatory intent, both based on circumstantial evidence: 1) that Defendants seized and examined his computer only after he complained about their allegedly unethical conduct, and 2) that he was treated differently from other

employees who used their work computers for private matters but who (unlike him) did not raise any ethical concerns about client confidentiality. Neither of these proffered reasons, either alone or together, supports a reasonable inference of retaliatory intent.

First, all of the relevant events— the June 24 meeting called by Picente, Zennamo's raising concerns concerning client confidentiality in response to the meeting, Defendants' discovery of private materials on Zennamo's computer, and Zennamo's termination on July 27—occurred in close proximity to one another. No record evidence suggests that the timing of Defendants' examination of Zennamo's computer or his subsequent termination was in response to his protected speech rather than Defendants' legitimate concerns regarding his use of the computer for his private practice. The temporal proximity between Zennamo's speech and his termination is therefore insufficient to support an inference of retaliatory intent.

As to Zennamo's argument that he was treated differently from other public defenders with regard to their personal use of the County computer, and that the differing treatment supports his theory of retaliation, the evidence established that at least one other public defender was terminated for personal use of County

resources,[4] and that others who violated the AUP but did so less extensively were censured in various ways. Thus, the alleged disparate treatment between Zennamo and other similarly situated public defenders also fails to support a reasonable inference of retaliatory intent.

Since Zennamo adduces no evidence that would support a finding of retaliatory intent, he has failed to identify any genuine issue of material fact that would preclude summary judgment on his First Amendment claim. *See* Fed. R. Civ. P. 56(a).

**III.    Violation of the Fourth Amendment and fraud to further digital trespass**

The Fourth Amendment "protects individuals from unreasonable searches and seizures conducted by the Government, even when the Government acts as an employer." *Nat'l Treasury Empls. Union v. Von Raab*, 489 U.S. 656, 665 (1989). This constitutional protection covers the physical papers of public employees and also operates "in the electronic sphere." *City of Ontario v. Quon*, 560 U.S. 746, 760 (2010).

---

[4] The evidence in the record indicates that this public defender ultimately chose to resign rather than face termination. *See* App'x at 373–74. But this is a distinction without a difference: like Zennamo, this public defender was compelled to leave the Public Defender's Office because of his personal use of County equipment, and Zennamo did not provide any evidence that he expressed similar ethics concerns.

But these protections attach only where a public employee has "a reasonable expectation of privacy against intrusions" by his employer in the areas or items searched. *O'Connor v. Ortega*, 480 U.S. 709, 716 (1987). In light of "the great variety of work environments in the public sector," the question of an employee's reasonable expectations "must be addressed on a case-by-case basis." *Id*. at 718.

In *Leventhal v. Knapek*, 266 F.3d 64 (2d Cir. 2001) (Sotomayor, J.), relied on by Zennamo, this Court considered whether an employee of the New York State Department of Transportation ("DOT") had a reasonable expectation of privacy in the contents of his office computer by looking to, among other things, "what access other employees or the public had to [his] office." *Id.* at 66, 73. We decided that Leventhal did have a reasonable expectation of privacy in part because the DOT did not have "a general practice of routinely conducting searches of office computers [n]or had placed Leventhal on notice that he should have no expectation of privacy in the contents of his office computer." *Id.* at 74; *see also Demaine v. Samuels*, 29 F. App'x 671, 675 (2d Cir. 2002) (summary order) (affirming district court's finding that employee lacked reasonable expectation of privacy where he received a manual that included a search policy).

Here, in contrast, the AUP made clear that Zennamo's County computer was to be used for County-related purposes only and that the computer was subject to search and monitoring by the County and its agents.  First, Section 4.3 of the AUP contained no fewer than twenty-five specified categories of "unacceptable use."  App'x at 727–29; *see also* App'x at 724 ( "All Oneida County electronic communications systems . . . are to be used for *business purposes only*." (emphasis in original)).  Second, the AUP declared the County's policy of monitoring County employees' computer use. *See* App'x at 726 ("Oneida County intends to monitor all electronic communication systems including but not limited to computer files, email, and Internet use without prior notice to Users.").  Third, the AUP provided that County computers were subject to audit, further implying that third parties could be granted access to the computers.  App'x at 726 ("Oneida County reserves the right to audit networks and systems on a periodic basis to ensure compliance with this policy.").  The AUP also explicitly warned users accordingly: in section 4.1.8, it provided that "Users shall have no expectation of privacy regarding the use of any Oneida County electronic communication systems, devices or resources."  App'x at 726.  Finally, Zennamo could not avoid being aware of each of these policies, since he was reminded of them on the screen

at every log-on.  He agreed that they governed his use of his County computer.

*See* App'x at 94–95 (Zennamo, in a deposition, agreeing that a banner notified him of the policy each time he logged in to his computer and that he agreed to be bound by it).[5]  Even if the AUP's policies of no personal use and possible examination had not been strictly enforced since its adoption in 2017, the policy was restated and underscored by Picente at the June 24 meeting, announcing the start of a new enforcement regime.

For these reasons, we conclude that Zennamo did not have a reasonable expectation of privacy in his County computer when the County obtained it and so has no cognizable Fourth Amendment claim.   The district court thus did not err in dismissing Zennamo's fourth cause of action, which rested on an asserted Fourth Amendment violation.[6]

---

[5] Urging a contrary conclusion, Zennamo points to Section 4.1.8 of the AUP, which, as previously noted, provides: "Monitoring pursuant to this policy of any and all electronic communications, computer files, email or Internet usage within a department which is subject to a legally recognized privilege or confidentiality requirement shall be done only by the Department Head or IT personnel authorized by the CISO."  App'x at 726.  But we read that provision as limiting only *who* may conduct a search of a County employee's computer—that is, a department head or authorized IT personnel—and not as governing whether a search may be conducted in the first place.  Thus, section 4.1.8 did not give Zennamo a reasonable expectation of privacy in his County computer.

[6] To the extent that Zennamo's fourth cause of action also raises a fraudulent misrepresentation claim under state tort law, that claim fails.   New York fraudulent misrepresentation claims require an allegation of "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the

**IV.    Breach of implied contract.**

Zennamo's breach of contract claim is premised on the existence of an implied contractual duty of the County, as his employer, to refrain from behavior that would prevent Zennamo from performing his duties as a public defender under his employment contract.  Zennamo argues that, because the County's policies allow access to his confidential client materials, he could not perform his job duties without violating the New York Rules of Professional Conduct.  So, he says, the County breached his employment contract by compelling him to choose between violating his ethical duties or violating his job duties (and thus being terminated from his employment).

The record before the district court, however, does not support the conclusion that the County ever accessed or reviewed Zennamo's confidential client files.  Defendants provided evidence that, while the County did have access

---

other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."  *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996).

Zennamo has failed to demonstrate any basis in the record to support the conclusion that the misrepresentation he alleges—*i.e.*, that his computer was taken under the pretext of checking it for a virus—was knowing.  Zennamo's allegations relate to a claimed misrepresentation by one Cory Flickinger, a member of the County's IT department who took Zennamo's computer.  Yet Zennamo makes no allegations and provides no evidence that Flickinger knew that the computer was being requested for something other than a virus issue or that someone, knowing its falsity, instructed Flickinger to obtain the computer by claiming a virus existed on it.  Accordingly, summary judgment was warranted on this claim.

to the files on public defenders' computers: (a) it did not view those files, (b) it had no intent to view those files, and (c) its policy did not permit it to view those files. *See* App'x at 409–11, 726. Zennamo has not adduced contrary evidence. Thus, we must conclude that he was not actually faced with the impossible choice he claims.

Zennamo's reliance on *Wieder v. Skala*, 80 N.Y. 2d 628 (1992), is misplaced. In that case, the plaintiff, an attorney at a law firm, realized that a co-worker was committing malpractice, and he was dissuaded by the law firm's partners from, and ultimately fired for insisting on, making an ethical report regarding the misconduct. *Id.* at 632. The Court of Appeals concluded that the partners had breached an implied term of their employment agreement with the plaintiff, reasoning that they "were not only making it impossible for [the] plaintiff to fulfill his professional obligations but placing him in the position of having to choose between continued employment and his own potential suspension and disbarment." *Id.* at 636–37.

Here, however, no genuine issue of material fact exists as to whether the County's actions made it impossible for Zennamo to perform his job duties while fulfilling his professional obligations. New York Rule of Professional Conduct 1.6, on which Zennamo relies, requires "reasonable efforts to safeguard confidential

information."  N.Y. Rules of Prof'l Conduct R. 1.6 cmt. 6B (2009).  Attorneys are expressly not in breach of the Rule if they have made such efforts.  *See id.*  Even to the extent that Zennamo believed County policy violated the Rules of Professional Conduct, his raising of the issue by email and in-person was a reasonable effort to safeguard his confidential client information.  This is especially so given the lack of evidence that the County had any intent to access that information.  Therefore, the district court was correct to dismiss Zennamo's fifth cause of action.

*        *        *

We have considered Zennamo's remaining arguments and find them without merit.  For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court